## NORFOLK AND WESTERN RAILROAD COMPANY
### *v.* PENNSYLVANIA.

ERROR TO THE SUPREME COURT OF THE STATE OF PENNSYLVANIA.

No. 294. Argued April 24, 25, 1890. — Decided May 19, 1890.

A railroad which is a link in a through line of road by which passengers and freight are carried into a State from other States and from that State to other States, is engaged in the business of interstate commerce; and a tax imposed by such State upon the corporation owning such road for the privilege of keeping an office in the State, for the use of its officers, stockholders, agents and employés (it being a corporation created by another State) is a tax upon commerce among the States, and as such is repugnant to the Constitution of the United States.

THE case is stated in the opinion.

*Mr. M. E. Olmstead* for plaintiff in error.

*Mr. John F. Sanderson,* (with whom was *Mr. William S. Kirkpatrick* on the brief,) for defendant in error.

MR. JUSTICE LAMAR delivered the opinion of the court.

The 16th section of an act of the legislature of the Commonwealth of Pennsylvania, approved June 7, 1879, provides as follows :

"That from and after the first day of July, Anno Domini one thousand eight hundred and seventy-nine, no foreign corporation, except foreign insurance companies, which does not invest and use its capital in this Commonwealth, shall have an office or offices in this Commonwealth for the use of its officers, stockholders, agents or employés, unless it shall have first obtained from the auditor general an annual license so to do, and for said license every such corporation shall pay into the state treasury, for the use of the Commonwealth, annually, one-fourth of a mill on each dollar of capital stock which said company is authorized to have, and the auditor general shall not issue a license to any corporation until said license fee shall have been paid: The auditor general and state treasurer are hereby authorized to settle and have collected an account against any company violating the provisions of this section, for the amount of such license fee, together with a penalty of fifty per centum for failure to pay the same : *Provided,* That no license fee shall be necessary for any corporation paying a tax under any previous section of this act, or whose capital stock or a majority thereof is owned or controlled by a corporation of this State which does pay a tax under any previous section of this act." Laws of Penn., Sess. 1879, 120, No. 122, § 16.

Under the authority vested in him by that statute the auditor general of the State assessed a license tax against the Norfolk and Western Railroad Company, a corporation existing under the laws of Virginia and West Virginia, for each of the two years ending July 1, 1885, on its capital stock of $25,000,000, at the rate prescribed in the act, amounting to

$6250 a year, on account of its having an office for the use
of its officers, stockholders, agents and employés, in the city
of Philadelphia. The case now before this court involves the
claim of the State for the year ending July 1, 1884, only. As
permitted by the laws of Pennsylvania, the company appealed
from the auditor general's settlement to the Court of Common
Pleas of Dauphin County, in that State. The case was tried
in that court without the intervention of a jury, under an act
of the state legislature approved April, 22, 1874, and the court
made the following findings of fact:

"1. The defendant is a railroad corporation existing under
the laws of the States of Virginia and West Virginia, and its
main line and branches lie wholly within these States.

"2. Its line of railroad connects at several points with the
railroads of other corporations, and, by virtue of these connec-
tions, and certain traffic contracts and agreements, it has be-
come a link in a through line of road, over which, as a part of
the business thereof, freight and passengers are carried into
and out of this Commonwealth.

"3. Its authorized capital stock is twenty-five millions of
dollars.

"4. From July 1, 1883, to July 1, 1885, it had an office in
this Commonwealth for the use of its officers, stockholders,
agents and employés. Its main office is at Roanoke, Virginia.

"5. During this period it expended a considerable amount
of money in Pennsylvania in the purchase of materials and
supplies for the use of its road; but, with trifling exceptions,
it owns no property and has no capital invested for corporate
purposes within this Commonwealth.

"6. It has paid no office license fee for the years named,
as required by section sixteen of the act of 1879 (P. L. 120).
Upon this section these settlements are based."

Judgment was rendered against the company on that find-
ing, sustaining the settlement made by the auditor general of
the State, for the sum of $7503.12. That judgment having
been affirmed by the Supreme Court of the State, this writ of
error was sued out. The assignment of errors is to the effect
that the court below erred in refusing to sustain the following

points, urged by the company, both in the trial court and in the Supreme Court of the State, viz.:

" (1) Inasmuch as the sixteenth section of the act of June 7, 1879, denies to foreign corporations and to the officers, agents and employés of foreign corporations the right to have an office or place of meeting in the State of Pennsylvania, the said section is in conflict with clause one of section two of article IV of the Constitution of the United States, which provides that ' the citizens of each State shall be entitled to all privileges . . . of citizens in the several States.'

" (2) The sixteenth section of the act of June 7, 1879, is an abridgment of the privileges and immunities of the citizens of the United States; it discriminates between corporations of the State of Pennsylvania and corporations of other States; it discriminates between corporations and natural persons having offices in Pennsylvania; it discriminates between foreign corporations; it denies to foreign corporations and to natural persons connected with such corporations, particularly this defendant and its officers, agents and employés, who were in the State maintaining an office and doing business at and before the passage of the said act, the equal protection of the laws, and is for these reasons void, because in conflict with article XIV of the amendments to the Constitution of the United States, and also because in conflict with the act of Congress — Revised Statutes, section 1977.

" (3) Inasmuch as the Norfolk and Western Railroad Company engaged in the business of transporting freight and passengers to or from other States out of or into the State of Pennsylvania, or from other States to other States, passing through the State of Pennsylvania, and for the successful carrying on of said interstate business it is necessary for the said company to maintain one or more offices in the State of Pennsylvania; therefore the sixteenth section of the act of June 7, 1879, if it requires that the said company cannot lawfully maintain an office in said State without first obtaining from the auditor general thereof a license so to do, and paying the fee prescribed by said section for said license, then the said section is unconstitutional and void, because in conflict with

clause three of section eight of article I of the Constitution of the United States, which provides that 'Congress shall have power to regulate commerce with foreign nations and among the several States.'"

The first two points are disposed of adversely to the company by the decision of this court in *Pembina Mining Co.* v. *Pennsylvania*, 125 U. S. 181. In that case we held, following *Paul* v. *Virginia*, 8 Wall. 168, that corporations are not citizens within the meaning of clause 1, sec. 2, of art. IV of the Constitution of the United States declaring that "the citizens of each State shall be entitled to all privileges and immunities of citizens in the several States." And we also held that section 1 of the Fourteenth Amendment to the Constitution declaring that no State shall "deny to any person within its jurisdiction the equal protection of the laws" does not prohibit a State from imposing such conditions upon foreign corporations as it may choose, as a condition of their admission within its limits. See, also, *Philadelphia Fire Association* v. *New York*, 119 U. S. 110.

The only question for consideration, therefore, arises under the third assignment of error, above set forth. It is well settled by numerous decisions of this court, that a State cannot, under the guise of a license tax, exclude from its jurisdiction a foreign corporation engaged in interstate commerce, or impose any burdens upon such commerce within its limits. Some of the cases sustaining this proposition are collected in *McCall* v. *California*, just decided, *ante*, 104, and need not be repeated here.

The question before us is thus narrowed to the two following inquiries: (1) Was the business of this company in the State of Pennsylvania interstate commerce? (2) If so, was the tax assessed against it for keeping an office in Philadelphia, for the use of its officers, stockholders, agents and employés, a tax upon such business? We have no difficulty in answering the first of these inquiries in the affirmative. Although the findings of fact are somewhat meagre on this question — much more so, indeed, than the undisputed evidence in the case warranted — enough is stated in the second paragraph of the

aforesaid finding to show that the company is engaged in interstate commerce in the State. It is there said, in substance: By virtue of its connections and certain traffic contracts with other railroads the Norfolk and Western Railroad Company "has become a link in a through line of road, over which, as part of the business thereof, freight and passengers are carried into and out of this Commonwealth." That is to say, the business of the through line of railroad, of which the plaintiff in error forms a part or in which it is a link, consists, in a measure, of carrying passengers and freight into Pennsylvania from other States, and out of that State into other States. It certainly requires no citation of authorities to demonstrate that such business — that is, the business of this through line of railroad — is interstate commerce. That being true, it logically follows that any one of the roads forming a part of, or constituting a link in, that through line, is engaged in interstate commerce; since the business of each one of those roads serves to increase the volume of business done by that through line.

On this point *The Daniel Ball*, 10 Wall. 557, 565, is an authority. In that case the steamer Daniel Ball was engaged in transporting goods on Grand River, wholly within the State of Michigan, destined for other States, and goods brought from other States destined for places in the State of Michigan, but did not run in connection with, or in continuation of, any line of vessels or railway leading to other States; and the contention was, that she was not engaged in interstate commerce. But this court held otherwise and said: "So far as she was employed in transporting goods destined for other States, or goods brought from without the limits of Michigan and destined to places within that State, she was engaged in commerce between the States, and however limited that commerce may have been, she was, so far as it went, subject to the legislation of Congress. She was employed as an instrument of that commerce; for whenever a commodity has begun to move as an article of trade from one State to another, commerce in that commodity between the States has commenced. The fact that several different and independent agencies are employed

in transporting the commodity, some acting entirely in one State, and some acting through two or more States, does in no respect affect the character of the transaction. To the extent in which each agency acts in that transportation, it is subject to the regulation of Congress." See, also, *Wabash &c. Railway Co.* v. *Illinois*, 118 U. S. 557, and cases cited.

We pass to the second inquiry above stated, viz.: Was the tax assessed against the company for keeping an office in Philadelphia, for the use of its officers, stockholders, agents and employés, a tax upon the business of the company? In other words, was such tax a tax upon any of the *means* or *instruments* by which the company was enabled to carry on its business of interstate commerce? We have no hesitancy in answering that question in the affirmative. What was the purpose of the company in establishing an office in the city of Philadelphia? Manifestly for the furtherance of its business interests in the matter of its commercial relations. One of the terms of the contract by which the plaintiff in error became a link in the through line of road referred to in the findings of fact, provided that "it shall be the duty of each initial road, member of the line, to solicit and procure traffic for the Great Southern Despatch (the name of said through line) at its own proper cost and expense." Again, the plaintiff in error does not exercise, or seek to exercise, in Pennsylvania any privilege or franchise not immediately connected with interstate commerce and required for the purposes thereof. Before establishing its office in Philadelphia it obtained from the secretary of the Commonwealth the certificate required by the act of the state legislature of 1874 enabling it to maintain an office in the State. That office was maintained because of the necessities of the interstate business of the company, and for no other purpose. A tax upon it was, therefore, a tax upon one of the means or instrumentalities of the company's interstate commerce; and as such was in violation of the commercial clause of the Constitution of the United States. *Gloucester Ferry Co.* v. *Pennsylvania*, 114 U. S. 196; *Philadelphia Steamship Co.* v. *Pennsylvania*, 122 U. S. 326, and cases cited; *McCall* v. *California*, just decided *ante*, 104.

*For the foregoing reasons the judgment of the court below is reversed, and the case is remanded to that court for further proceedings in conformity with this opinion.*

MR. CHIEF JUSTICE FULLER, MR. JUSTICE GRAY and MR. JUSTICE BREWER dissented.