## CLYDE S. S. CO. v. CITY COUNCIL OF CHARLESTON et al.

(Circuit Court, D. South Carolina. August 15, 1896.)

INTERSTATE COMMERCE—LICENSE ON STEAMBOAT BUSINESS.

A foreign corporation, whose vessels, while en route between the ports of two different states, stop at a port of a third state, is not liable for a license tax at that port because it there leases a wharf or landing; has plant and machinery for the taking in and discharge of freight and passengers; engages stevedores and longshoremen, who are in its sole employment; has there an agent and subordinate clerks, an office, with furniture, books, and appliances; and keeps a bank account and occasionally purchases supplies there,—since all such operations are an essential and integral part of its interstate commerce business.

J. P. K. Bryan, for complainant.
Charles Inglesby, Corp. Counsel, for defendants.

SIMONTON, Circuit Judge. This bill is filed, praying an injunction against the levy of an execution to enforce the payment of a license tax, and the penalties thereon. The city council of Charleston, by virtue of authority granted by the legislature of South Carolina, adopted an ordinance to regulate licenses for the year 1895.

The second section of this ordinance provides that each person or firm required by the ordinance to obtain a license to engage in any trade, business, or profession for which a license is required shall make, at the time of applying for such license, and file with the city assessor, a statement setting forth the name or style of himself or of his company, with the names of the several members of a firm; the trade, business, or profession for which a license is required; the place where such trade, business, or profession is conducted for which such license is required; and, if required, the amount of business done in the previous year. Section 3 imposes a penalty of 50 per cent. for exercising such business without taking out such license or making such statement. Section 10 of said ordinance provides:

"For a license to carry on any trade, business or profession hereinbefore mentioned within the limits of the city of Charleston, the following sums shall be paid to the city treasurer, who upon receipt of the same shall issue therefor proper license as hereinbefore provided, viz.: * * * (29) Steamship (regular lines) agencies or companies each five hundred dollars."

After the passage of that ordinance the city assessor addressed a notice to James E. Edgerton, agent Clyde Steamship Company, Brown's Wharf, requiring him, pursuant to the provisions of section 3 of the above ordinance, to come before him at his office, on a day certain, to be examined under oath touching the nature of his business, and everything which may tend to evince the true amount of the license tax for which he is liable under said ordinance, which tax he had not paid. The result of this was the imposition of the penalty, and the issuance of the execution for the license tax, penalty, and costs. The grounds upon which the application for an injunction are based are: First, that the complainant does not come within the terms of the said ordinance, for it does not carry on any trade, business, or profession within the limits of the city of Charleston; second, that the sole business in which the complainant is engaged is that of interstate commerce, and that such business is not taxable under state authority.

The Clyde Steamship Company, which has been called upon to pay this license tax, is a corporation of the state of Delaware. It controls and runs a line of steamships over the Atlantic Ocean, between the ports of New York and Jacksonville, stopping on each voyage to and from these two ports at the port of Charleston, for the purpose of receiving and landing passengers, and of taking in and discharging freight. For these purposes it leases a wharf or landing; has plant and machinery for the taking in and discharge of freight, and lands and receives passengers; engages stevedores and longshoremen, who are in its sole employment; has an agent, with clerks subordinate to him, an office, with the usual furniture, books, and appliances; and keeps a bank account. Its situs is New York City, and the bulk of its supplies are obtained there. Occasionally, to meet present necessities, it purchases in Charleston coal, water, fresh meat, fish, and vegetables. The question in the case is, is the complainant engaged solely and exclusively in the business of interstate commerce, or does it carry on any business within the

limits of the city of Charleston, independent of, and not necessarily an essential or integral part of, its interstate commerce business? There is no doubt that the complainant is engaged in interstate commerce,—the transportation of passengers and freight between two or more states, using the ocean as the highway. To such transportation it is absolutely essential that there should be a place for landing, means of landing, an agent to receive on arrival and departure, with such assistants for this purpose as the exigencies of the business demand.    These are essential, in the sense that without them interstate commerce would be impossible.    When we speak of "interstate commerce," these are included.    "Commerce includes the fact of intercourse and traffic.    Intercourse and traffic embrace all the means, instruments, and places by and in which intercourse and traffic are carried on, and comprehend the act of carrying them on at these places, and by and with these means."    McCall v. California, 136 U. S. 104, 10 Sup. Ct. 881. ᾽ In Gloucester Ferry Co. v. State of Pennsylvania, 114 U. S. 196, 5 Sup. Ct. 826, the question ᾽was whether the ferry company was doing business within the commonwealth, so as to come within the provision of the statute requiring every company doing business in the commonwealth to pay an annual tax, dependent on dividends declared.    The ferry company ran a line between Gloucester, New Jersey, and Philadelphia, carrying passengers and freight.    It leased a wharf in Philadelphia, on which passengers and freight were landed and received.    This was its entire business and property connected with Pennsylvania.    The supreme court held that the business of landing and receiving passengers and freight at the wharf in Philadelphia is a necessary incident to, and part of, their transportation across the Delaware river from New Jersey.    Without it that transportation would be impossible.    Transportation implies the taking up of persons and property at one place, and putting them down at another.    A tax, therefore, upon this, is a tax on their transportation; that is, a tax upon commerce between the states.    It is clear, therefore, that the lease and use of a wharf is not such a business within the limits of the city of Charleston, independent of, and not necessarily an essential or integral part of, interstate commerce.    If the leasing of a wharf is a part of interstate commerce, it follows that all the instrumentality and means by which only the wharf can be made useful for the purpose are also parts of interstate commerce.    The power vested in congress to regulate commerce between the states—an exclusive power—"also embraces within its control all the instrumentalities by which that commerce can be carried on, and the means by which it may be aided and encouraged."    Gloucester Ferry Co. v. State of Pennsylvania, supra.

Does the fact that the complainants have an office in the city of Charleston bring it within this ordinance?    In Pembina Con. Silver Mining & Milling Co. v. Pennsylvania, 125 U. S. 181, 8 Sup. Ct. 737, is an indirect answer to this question:

"The exaction of a license fee by a state to enable a corporation organized under the laws of another state to have an office within its limits for the use of the officers, stockholders, agents, or employés of the corporation does not

infringe upon the commercial clause of the federal constitution, provided the corporation is not engaged in carrying on foreign or interstate commerce, or employed by the government of the United States."

The precise point was decided in Norfolk & W. R. Co. v. Pennsylvania, 136 U. S. 114, 10 Sup. Ct. 958. In that case the application of the statute referred to in the case just quoted to the Norfolk & Western Railroad came up for decision. That company was a corporation under the laws of the two Virginias, having an office in the city of Philadelphia for the use of its officers, stockholders, agents, and employés. Its main office was at Roanoke, Va. It carried goods into and out of Pennsylvania. While it had its office in Pennsylvania, it expended a considerable amount of money in that state, in the purchase of supplies and material for the use of its road. It had no property in Pennsylvania, and no capital invested there for corporate purposes. The supreme court, notwithstanding the facts stated, held the Norfolk & Western not responsible for the license tax. "That office," says the court, "was maintained because of the necessities of the interstate business of the company, and for no other purpose. A tax upon it was therefore a tax upon one of the means or instrumentalities of the company's interstate commerce, and as such was in violation of the commercial clause of the constitution of the United States." The only other matters of business within the city of Charleston are the keeping of a bank account, and the occasional purchase of supplies. The last is answered by the case of the Norfolk & Western Railroad above quoted. A bank account is an inseparable incident of all business in a commercial country. The able counsel for the city presses upon the court consideration of the fact that the property and business of this corporation are protected by the city of Charleston, and for this protection it owes a duty to the city. But the city of Charleston invites to her port the commerce of the world, and promises to vessels, navigators, and seamen the protection of her laws, fire department, and police. When this invitation is accepted, should the commerce be made to pay for the protection promised? The record discloses no other business than that which has been stated, done within the city of Charleston. All these are inseparable from the business of interstate commerce conducted by them. In Western Union Tel. Co. v. City Council of Charleston, 56 Fed. 419, the two telegraph companies, complainants in that case, each had an office and servants in the city of Charleston. They were held liable to the license tax solely because it appeared that, in addition to their interstate commerce business, they transmitted messages within the state of South Carolina, and that for this business only was the license tax imposed. The conclusion is that the business done by the complainant is solely interstate commerce; that whatever is done at Charleston, and within the city of Charleston, is an inseparable incident of interstate commerce, and so not only not taxable by the city, but not within the true intent and meaning of the ordinance. Let a perpetual injunction issue, as prayed for in the bill.