STONE, CHAIRMAN OF THE STATE TAX COMMISSION, v. YORK ICE MACHINERY CORPORATION.

(Division A. Nov. 16, 1942.)

[10 So. (2d) 380. No. 35182.]

**J. H. Sumrall**, of Jackson, for appellant.

Watkins & Eager, of Jackson, for appellee.

**McGehee, J.**, delivered the opinion of the court.

The question presented for decision in this case is whether or not the local activity of a nonresident performed in the installation, adjustment and testing of

certain air-conditioning systems in buildings located in this state and constituting a substantial part of the performance of the contracts for the sale of the machinery and equipment which was manufactured outside of the state by such nonresident and shipped here in interstate commerce for use in air-conditioning such buildings, is subject to the provisions of Section 57, subsections (a) and (b), and Section 247, of Chapter 20, Laws of Mississippi Extraordinary Session of 1935, and Section 2-e, Chapter 119, Laws of 1934, which seek to require the payment of certain privilege taxes and a sales tax respectively for the right to engage in such activities in this state.

Section 57, subsection (a), of Chapter 20, Laws of the Extraordinary Session of 1935, requires "each person who offers or bids to contract for a fixed price, commission, fee or wage to construct, repair, or to superintend the construction or repair of any building, highway, street, sidewalk, bridge, culvert, sewer or water system, drainage or dredging system, electric or steam railway, reservoir or dam, hydraulic or power plant, electric lighting or power system, steam heating plant or system, transmission line, pipe line, tower, dock, wharf, excavation, grading, or other improvement or structure, or any part thereof, the contract price of which exceeds the sum of three thousand dollars," to pay for and obtain from the State Tax Commission a license as a contractor, in the sum of $25, before offering or submitting any bid for such work; and subsection (b) of said Act provides that "any person who shall enter into a contract, for a fixed price, commission, fee or wage, to construct, repair or superintend the construction or repair of any of the projects named in paragraph (a) hereof, or any part thereof, the contract price of which is in excess of $3,000.00, shall, before beginning the execution of such contract, apply for, pay for and obtain, an additional license from the state tax commis-

sion, computed at the rate of fifty cents (50c) for each thousand dollars or fractional part thereof, that said contract price exceeds ($3,000.00) three thousand dollars. Said license when so obtained, shall entitle the holder thereof to enter into and execute contracts within the aggregate amount covered by said license, at any place within the state for the full period of twelve months from the date thereof.'' Section 247 of said Act provides that ''all persons liable for privilege taxes who shall fail to procure the license therefor before beginning the business for which a privilege tax is required by this act, . . . shall . . . be liable for the amount of the tax required for such business and fifty per centum thereof.'' And it is made the duty of the sales tax commissioner to collect such tax and the penalty in such case.

Section 2-e of Chapter 119, Laws of 1934, provides that ''upon every person engaging or continuing within this state in the business of contracting, as defined in the privilege tax law of this state, and amendments thereto, there is likewise hereby levied and shall be collected a tax, on account of the business engaged in, equal to one per cent of the gross income of the business.''

The York Ice Machinery Corporation, appellee herein, is a Delaware corporation having its home office and principal place of business in the city of York, State of Pennsylvania. It has not qualified to do business in the State of Mississippi as a foreign corporation; neither has it paid any privilege tax as a contractor nor the sales tax upon the total contract price of any undertaking wherein it has furnished and installed machinery and equipment for the air-conditioning of buildings in this state, and for which taxes the appellant A. H. Stone, Chairman of the State Tax Commission, contends that it is liable under the statutes above referred to in connection with certain local activities performed in the installation, adjustment and testing of an air-conditioning system in the Heidelberg Hotel at Jackson, Missis-

sippi, under a contract of August 31, 1937, at a cost of $31,300 and an additional contract of July 19, 1938, at a cost of $5,634, the installation under the first of which said contracts began on April 15, 1938, and was concluded on September 20, 1938, and under the second contract beginning on September 1, 1938, and concluding on September 30, 1938, and wherein the cost of installation amounted to twelve percent of the total contract price in the first instance and seven percent thereof in the second instance. The taxes demanded by the appellant were paid to him by the appellee under protest and this suit is for the recovery of such taxes together with similar taxes likewise paid by the appellee in connection with its contract for furnishing and installing a meat curing plant for the Board of Supervisors of Adams County at Natchez, Mississippi, at a cost of $14,100, the work of installation, adjustment and testing said plant having commenced on October 1, 1939, and being completed on January 10, 1940, and the cost of which local activity amounted to eight percent of the total contract price; and also for such taxes so paid in connection with furnishing and installing an air-conditioning system in the Walthall Hotel at Jackson, Mississippi, at a cost of $21,530, the installation, adjustment and testing of which began on May 18, 1940, and was concluded on August 3, 1940, and the cost of which was eight percent of the total contract price. The foregoing facts are alleged in the declaration by the appellee for the recovery of such taxes, and the contracts entered into between the appellee and the owners of the respective properties which were to be improved by the installation of such air-conditioning systems therein are made exhibits to the declaration and show that pursuant to a bid submitted in this state by ''contractor'' through one of its salesmen, and accepted here by the owner of the property to be air-conditioned, but subject to final approval at an office of the appellee in Houston, Texas, the ma-

chinery and equipment was to be manufactured outside of the state, shipped to its destination in this state, and then trucked or carted from the railroad station to the building by contractor at its own expense and to be there installed by the expert engineers and other employees of contractor at the total contract price hereinbefore mentioned. The contracts disclose an undertaking on the part of contractor in each instance to perform considerable local work in connection with the proper installation, adjustment and practical testing of the system before the obligation of the purchaser arose to finally accept the machinery and equipment as a completed air-conditioning system and become bound to pay for the same under such contract. It also appears from such contracts that the plans and specifications for the installation of such systems were agreed upon and embodied in the contract prior to the manufacture of the machinery and equipment, and that the same were based upon measurements and observations made in the building by some representative of contractor prior to submitting the bid for furnishing and installing such system.

The declaration further alleges that because of the inherent nature of the contract for the sale of the machinery and equipment therein designated the assembling, installation and testing thereof at the point of destination is a highly relevant and appropriate part of the sale, that it required the services of skilled experts for the doing of such work and was essential to complete the interstate business in which the seller was engaged in making sales of air-conditioning systems, and that the seller was therefore entitled to the protection of Article I, Section VIII of the Constitution of the United States, vesting in Congress the power to regulate commerce among the several states, and that the defendant's act in making the assessment and collecting the taxes in question from the plaintiff violated the said commerce clause of the Federal Constitution. The trial court overruled

the demurrer of the State Tax Commissioner, who, declining to plead further, suffered judgment to be entered against him for the sum of $925.70 in taxes involved, and prosecutes this appeal.

In view of the numerous projects mentioned in Section 57, subsection (a), of the statute hereinbefore quoted from, the construction or repair of which involves the use of materials and equipment fabricated or manufactured outside of the state and the performance of local activity in the state in connection with such construction or repair, and in view of the necessity for the exercise of the local taxing power in order to meet the increased burdens of government and to the end that all who enjoy the protection of the local government should pay their fair portion of the taxes needed for its support, the principle of law now presented for consideration becomes of greater importance with each passing year, and the problem now engaging the attention of the courts is that of according protection to the nonresident engaged in interstate commerce against the effect of laws that would unjustly discriminate against interstate commerce and at the same time to prevent the commerce clause of the Constitution from working a discrimination against resident citizens who are required to pay taxes similar to those here sought to be imposed for doing an intrastate business of the same kind and character.

In the case of Browning v. Waycross, 233 U. S. 16, 34 S. Ct. 578, 58 L. Ed. 828, the court held that the business of erecting lightning rods within the corporate limits of the city of Waycross as the agent of a nonresident manufacturer on whose behalf such agent had solicited orders for the sale of such rods, and from whom he had received the rods when shipped into the state on such orders, may be subject to a municipal license tax without violating the commerce clause of the Federal Constitution, although the contracts under which the rods were shipped bound the seller at his own expense to attach

them to the houses of the persons who ordered them. In that case the court distinguished a number of its former decisions wherein the transactions which it was asserted amounted to the doing of local business consisted only of acts concerning interstate commerce goods, disassociated from any attempt to connect them with or make them a part in the state of property which had not and could not have been the subject of interstate commerce.

In General Railway Signal Co. v. Com. of Virginia, 246 U. S. 500, 38 S. Ct. 360, 62 L. Ed. 854, the court held that a foreign manufacturing corporation is engaged in local business within the state so as to be liable to a fine for failing to procure the proper certificate of authority, where, in carrying out its contracts for the installation within the state of automatic railway signal systems and where in the performance of such contracts in the state it employed labor, skilled and unskilled, to dig the ditches in which conduit for the wires were placed, to construct concrete foundations, and to paint the completed structures, and that the state was entitled to exact from such foreign corporation a fee as a condition of permitting it to do such local business in the state, without unlawfully burdening interstate commerce.

Thereafter in the case of York Manufacturing Co. v. Colley, 247 U. S. 21, 38 S. Ct. 430, 432, 62 L. Ed. 963, the court held that a provision in the contract of sale of an artificial ice plant, manufactured outside of the state of Texas, and by which the nonresident seller agreed to furnish an engineer who should assemble and erect the machinery at the point of destination and should make a practical efficiency test before complete delivery is relevant and appropriate to the interstate sale of the machinery, and, that therefore the transaction would not justify the courts of the state to which the machinery was shipped in refusing to enforce payment of the purchase price, on the theory that the corporation was doing

local business in the state without having first secured the permit required by the Texas statute as a condition precedent to the right to sue in the local courts. The trial court had followed the ruling in Browning v. Waycross, supra, treating it as having conclusively determined that the performance of the contract for the supervision by an engineer was purely intrastate commerce and subject to be treated as such, although it formed a part of the stipulations of the principal contract of sale conceded to be interstate commerce. The United States Supreme Court held that the trial court's decision was erroneous and distinguished the Colley case from the Waycross case. And while the reasoning of the court as disclosed by the opinion in York Manufacturing Co. v. Colley, supra, tends strongly to support the contention of the appellee in the case at bar, the facts in that case disclose that the installation of the ice plant was actually done by the purchaser who employed the necessary local labor and paid the expert engineer furnished by the seller for such installation his wages of $6 per day. In other words, the seller only furnished an expert to supervise the installation and permitted the purchaser to employ him at $6 per day for that purpose and required the purchaser to employ the other labor at his own expense. In the case at bar, however, the appellee itself performed the work of installation, adjusting and testing the air-conditioning system at a cost amounting to a substantial part of the contract price and included therein. Moreover, in the Colley case the court expressly stated that its decision did not concern the subject passed on in the General Railway Signal Co. v. Com. of Virginia, supra, "since in that case the work required to be done by the contract over and above its inherent and intrinsic relation to the subject-matter of the interstate contract involved the performance of duties over which the state had a right to exercise control because of their inherent intrastate character." In the

General Railway Signal Co. v. Virginia case, supra, as in the case at bar, as well as in the Colley case, the signal system would have been of no use to the railway company unless it had been properly installed for use by persons who understood how such installation should be done.

In the recent case of Case v. Mills Novelty Co., 187 Miss. 673, 193 So. 625, 626, 126 A. L. R. 1102, our court held that where the Mills Novelty Company, doing business in Illinois, accepted a written order in Illinois from a resident of Waynesboro, Mississippi, for an ice cream dispenser and the contract of sale contained a service agreement, the performance of which required the non-resident seller to employ a local mechanic, when servicing the dispenser, the seller was "doing business in the state," so that the contract was void and could not be enforced in this state in an action of replevin for possession of the dispenser where the nonresident corporate seller had not filed a copy of its charter with the Secretary of State as required by Section 4164, Code of 1930. The court cited and quoted from Browning v. Waycross, supra, and distinguished it from the case of York Manufacturing Co. v. Colley, supra, which had held that an agreement by the seller to furnish an engineer at the expense of the purchaser who would superintend the installation of the ice plant did not constitute doing business in the State of Texas, on the ground that the installation agreement was a mere incident of the contract for the making of the machinery and appropriate thereto, and held that the servicing of the ice cream dispenser was purely a local transaction applying the principle announced in the Waycross case.

But aside from the confusion, if any exists, as to what has been held in former decisions to be a burden upon interstate commerce in the application of state statutes in denying the right of access to the courts for the enforcement of contracts, it must be kept in mind that the

present trend of judicial decisions in upholding tax statutes is in favor of a more liberal construction in holding that unless the tax complained of tends to prohibit interstate commerce or place it at a disadvantage in competition with intrastate commerce, it does not violate the commerce clause of the Federal Constitution, and especially where the tax is not on the commerce but is levied on the right to engage in a local activity for the exercise of which local citizens are required to pay. This thought was given expression in the case of A. H. Stone, Commissioner, v. Interstate Natural Gas Co., 103 F. (2d) 544, 549, involving an entirely different state of facts it is true, when the Circuit Court of Appeals of the Fifth Circuit recognizing the impossibility to fully reconcile the many former decisions, announced that "the principle of stare decisis in constitutional interpretations has recently received shattering blows in the Supreme Court, and especially in the field of immunities from general taxation. The increasing social burdens assumed by our governments, both State and national, will require increasing and more searching taxation for their support. Any immunity from equal general taxation appears more and more inconvenient and unjust. The recent reexamination on the basis for such immunities has resulted in an upheaval. The current of authority has been turned. For the judicial navigator the cases are no longer the beacons marking out a fixed if tortuous channel. He must for a while fix his eyes anew upon the Constitution as the pole star of his firmament and steer his course rather by principle than by precedent."

The decision in the case, supra, was affirmed by the Supreme Court of the United States without an opinion, which action under the facts there involved did not necessarily mean that the court based its decision upon the reasoning of the trial court, but we find that in the later case of McGoldrick v. Berwind-White Coal Min. Co., 309 U. S. 33, 60 S. Ct. 388, 392, 84 L. Ed. 565, that court

held that "it was not the purpose of the commerce clause to relieve those engaged in interstate commerce of their just share of state tax burdens, merely because an incidental or consequential effect of the tax is an increase in the cost of doing the business. . . . Not all state taxation is to be condemned because, in some manner, it has an effect upon commerce between the states, and there are many forms of tax whose burdens, when distributed through the play of economic forces, affect interstate commerce, which nevertheless falls short of the regulation of the commerce which the Constitution leaves to Congress." In the opinion in that case the court stated that taxation which placed interstate commerce at a disadvantage as compared with intrastate commerce, and thereby discriminates against the former, is a familiar example of the exercise of the taxing power of a state in an unconstitutional manner. That the taxation of a local business or occupation which is separate and distinct from the transportation in interstate commerce, is not forbidden "merely because in the ordinary course such transportation or intercourse is induced or occasioned by such business, or is prerequisite to it." The court then recognized the fact that in but few cases could it be said with assurance that the local tax did not in some manner affect the commerce or increase the cost of doing it, and the court held that while commerce between the states shall not be unduly impeded by state action the power to impose taxes for the support of the state government should not at the same time be unduly curtailed. As was observed by the court in that case the purpose of the commerce clause is to protect interstate commerce from discriminatory state action, but this purpose must be reconciled with the right of the state taxing power to cause interstate commerce to bear its share of state tax burdens to the end that there shall be no discrimination against intrastate commerce.

.It is true, as contended by the appellee, that a different state of facts were involved in the McGoldrick case, supra, wherein a state sales tax statute of New York was upheld, and that this is likewise true in the recent cases decided by this court, Stone v. General Contract Purchase Corporation, 193 Miss. 301, 7 So. (2d) 806, 810, 140 A. L. R. 1029, and Stone v. General Electric Contracts Corporation, 193 Miss. 317, 7 So. (2d) 811, but we are addressing ourselves to the views expressed by the court in each of these cases as to the purpose and effect of the commerce clause of the Federal Constitution as applied to taxes which do not discriminate against interstate commerce, and for the purpose of showing that it has been found necessary to revivify some of the old principles and precedents by constant reference to the ever-shifting needs of life to the end that the expense of the increased social burdens being assumed by the government from year to year may be taken care of. In the two recent cases, supra, decided by this court we quoted language of the court in the case of McGoldrick v. Berwind-White Coal Min. Co., supra, and with full approval as expressing the view of this court in regard to the application of the commerce clause of the Federal Constitution, and further stated in the General Contract Purchase case that "in addition, the exaction of this tax imposes the same burden on the business taxed whether prosecuted by means of intra or interstate commerce, or both, and a 'tax or other burden obviously does not discriminate against interstate commerce where "equality is the theme."'" Citing Nelson v. Sears, Roebuck & Co., 312 U. S. 359, 61 S. Ct. 586, 85 L. Ed. 888, 132 A. L. R. 475; McGoldrick v. Berwind-White Coal Min. Co., supra; Stone v. Interstate Natural Gas Co., supra.

Where such a substantial portion of the contract for the sale, installation, adjustment and testing of the air-conditioning systems involved in this case was performed in this state, as a condition precedent to its final ac-

ceptance by the purchaser, in the exercise of a local activity to the extent disclosed by the declaration in this case, the contention of the appellee as to its nonliability for the taxes in question, if sustained, would work an unjust discrimination against those residing in this state who may undertake to manufacture and install machinery and equipment in connection with many of the projects enumerated by the statute and also where the materials for any of such projects are ordered and shipped in interstate commerce from manufacturers out of the state and assembled and installed by local residents who may be engaged in the business of contracting in this state and liable for the taxes in question. In our opinion the tax here imposed has equality as its theme and that the statutes in question apply to the activity in which the appellee is here engaged.

The judgment of the court below in overruling the demurrer of the appellant is therefore reversed and the cause remanded.

Reversed and remanded.