280 P.2d 967

**RILEY STOKER CORPORATION, a corporation, Plaintiff,**

v.

**STATE TAX COMMISSION of Utah, Defendant.**

No. 8257.

Supreme Court of Utah.

March 17, 1955.

2. Woodard v. Allen, 1 Utah 2d 220, 265 P.2d 398, and authorities cited in footnote 2 thereto.

Ray, Quinney & Nebeker, Salt Lake City, for plaintiff.

C. Preston Allen, Salt Lake City, for defendant.

CROCKETT, Justice.

Riley Stoker Corporation of Worcester, Massachusetts sold, delivered and constructed four large steam generating plants in Utah between the years 1947 and 1953. It paid no corporate franchise taxes to the state upon the assumption that the transaction was one in interstate commerce which the state could not burden by taxation,[1] and that it was thus not subject to the Utah corporate franchise tax.[2] Defendant Tax Commission ruled otherwise, and levied a tax against plaintiff based on the proportion its activities in Utah bore to the entire transactions. Riley Stoker appeals, challenging this determination as erroneous.

In support of its contention that its activities in Utah were but a part of interstate commerce, Riley Stoker cites York Mfg.

---

1. Article I, Section 8, of the Constitution of the United States; Gibbons v. Ogden, 9 Wheat. 1, 6 L.Ed. 23.

2. The Utah law provides that "Every * * * corporation * * * for the privilege of doing business in the state, shall annually pay to the state a tax * * *." Utah Code Anno.1953, 59-13-3.

Co. v. Colley.[3] In that case the York Company in Pennsylvania agreed to provide an artificial ice machine for a Texas purchaser and to furnish an engineer to assemble, erect and test the machinery. The company failed to obtain the requisite authority to do business in Texas. Notwithstanding its activity within the state, it was held that the courts of Texas were not justified in refusing to allow the York Company to enforce its contract for payment on the ground that it was doing business within the state without qualifying. The court said that so long as activities are "relevant and appropriate to the interstate sale * * *" they are a part of the transaction and do not constitute doing business within the state. It is to be noted that the court placed emphasis on the fact that the York Company's function within Texas was supervisory, while all of the actual construction was to be done by the purchaser, and that the transaction was to be carried out within a relatively short period of time.

Other cases to the same general effect are cited,[4] among which is Gross Income Tax Division v. Surface Combustion Corp. (Indiana) [5] which plaintiff suggests is "strikingly similar" to the instant one. There it was held that a gross income tax could not be levied upon receipts of sales of certain industrial furnaces shipped from Ohio merely because installation was supervised by the seller. However, the court there also stressed the minor nature of the work done by the seller in Indiana, mentioning that there was "nothing to be done [in Indiana] except, in the case of the small furnaces, to fasten them on the base prepared by the customer, and adjust them to a satisfactory working condition, and to re-assemble the large furnaces where required."

Also among the cases urged by the taxpayer as persuasive in its favor is one from this court, Advance-Rumley Thresher Co. v. Stohl[6] in which the issue was whether the assembling of a combined harvester in this state was interstate commerce. In holding that it was, this court cited with approval and as controlling the York Mfg. Co. v. Colley case, supra, and emphasized the limited function of the seller in assembling the harvester here, stating: "The next day [after the shipment arrived] two experts of plaintiffs came to Tremonton

---

3.  247 U.S. 21, 38 S.Ct. 430, 432, 62 L.Ed. 963.

4.  Aeolian Co. v. Fischer, 2 Cir., 40 F.2d 189; Palmer v. Aeolian Company, 8 Cir., 46 F.2d 746; Deaton Truck Lines, Inc., v. Bahnson Co., 207 S.C. 226, 36 S.E.2d 465; Hess Warming & Ventilating Co. v. Burlington Grain Elevator Co., 280 Mo. 163, 217 S.W. 493; Kaw Boiler Works Co. v. Interstate Refineries, 118 Kan. 693, 236 P. 654; Vilter Manufacturing Co. v. Evans, 86 Ind.App. 144, 154 N.E. 677; Norfolk & Western Railroad Co. v. Commonwealth of Pennsylvania, 136 U.S. 114, 10 S.Ct. 958, 34 L.Ed. 394.

5.  232 Ind. 100, 111 N.E.2d 50, 56.

6.  75 Utah 124, 283 P. 731.

and assembled the machinery and started the motor to see that it would operate."

■ The position of the Tax Commission does not appear to be at odds with these authorities relied upon by the Riley Stoker Company, nor do we find ourselves in discord with them. It is recognized that not only contracts for the sale and shipment of machinery or equipment from out of the state into Utah are interstate commerce, but further that incidental services in the assembling, inspecting and testing of such equipment does not deprive it of its interstate character. The point of controversy here is as to where the line should be drawn between the limited activities of a supplier of machinery just described which are properly classified as "intrinsically interstate and immediately and inherently connected with interstate commerce * * * "[7] and activities which go so far beyond that concept that the Tax Commission could reasonably say that they lose their interstate character and become the carrying on of business within the state.

■ It must of course be recognized that the mere fact that some machine or product is originally manufactured in a foreign state will not prevent activities in connection with its installation or use from being properly classified as intrastate business and subject the supplier to local taxation. Many of our states have little or no manufacturing of "hard goods" in the nature of machinery and equipment so these are necessarily shipped in from other states. If this fact alone could classify the business of the supplier, or contractor or builder who uses them as interstate commerce, intolerable confusion, uncertainty and inequities with respect to state regulation, control and taxation in comparison with businesses using locally manufactured products, would eventuate. This has been recognized by the United States Supreme Court in the case of Browning v. City of Waycross[8] which involved the sale and shipment of lightning rods from Missouri to Georgia and the erection and placing of them for use in the latter state. In holding that the activities of the defendant in doing so amounted to commerce in Georgia, the court said: "It is manifest that if the right here asserted were recognized, or the power to accomplish by contract what is here claimed were to be upheld, all lines of demarcation between national and state authority would become obliterated, since it would necessarily follow that every kind or form of material shipped from one state to the other, and intended to be used after delivery in the construction of buildings or in the making of improvements in any form, would or could be made interstate commerce."[9]

In the case of General Railway Signal Co. v. Commonwealth of Virginia[10] the

7. York Mfg. Co. v. Colley, 247 U.S. 21, 26, 38 S.Ct. 430, 432.

8. 233 U.S. 16, 34 S.Ct. 578, 58 L.Ed. 828.
9. 233 U.S. at page 23, 34 S.Ct. at page 580.
10. 246 U.S. 500, 38 S.Ct. 360, 62 L.Ed. 854.

168

contract was to sell, furnish and install automatic railway signal systems. The court held that the digging of ditches for the electric conduit, the construction of concrete foundations and the painting of the finished signal devices was work constituting a substantial portion of the transaction thus amounting to doing business within the state and making the company subject to a fine for failing to procure the proper state authority.

■ We are aware that the York Mfg. Co. v. Colley case, supra, was decided after the two cases just referred to and that the latter case might be thought to modify their effect. The court did not so indicate, but pointed out certain factual differences with which we are not here concerned since in our case there was a much more substantial amount of activity in Utah than in any of those cases or any of the cases cited by the taxpayer here. The York Mfg. Co. v. Colley decision contains a suggestion which may well be applied to this case, that is, that a means of determining whether the work done in a state is "over and above its inherent and intrinsic relation to the subject-matter of the interstate commerce" may be found in noting whether it involved "the performance of duties over which the state had a right to exercise control because of their inherent *intrastate* character." [11] This appeals to us as a sound observation. Similarly in People ex rel.

Manila Electric R. & Lighting Corp. v. Knapp, [12] the New York Court of Appeals recited that where activities within a state are of such a nature that the state might reasonably regulate or supervise them, they more readily constitute "doing business" for the purpose of imposition of a state corporate franchise tax.

■ A survey of the facts of the instant case makes manifest that the various activities of Riley Stoker in erecting these steam generating plants in Utah, are of such a nature as may properly be regarded as *intrastate* in character so as to be subject to regulation under state laws within the suggestions of the York Manufacturing and Manila Railway cases just referred to, and present a very different situation from the cases relied upon by Riley Stoker. Those cases generally have these characteristics: The activities in the state of destination usually consist of re-assembly of the component parts of machines or units manufactured in another state which were "knocked down" for convenience in shipping, or the assembly, conditioning and testing of such products incidental to putting them into condition to operate; such are relatively minor in comparison to the total costs of manufacturing and supplying the article, and involve no major construction work; and it is done within a relatively short period of time.

11. 247 U.S. at page 26, 38 S.Ct. at page 432.

12. 229 N.Y. 502, 128 N.E. 892.

By way of contrast, in the instant case these generating plants sold and constructed in Utah by Riley Stoker are actually quite large industrial buildings of up to 11 stories in height. Although the engineering and design were done at the plaintiff's plant in Massachusetts, they were never actually put together there, all of the assembly and construction taking place within the state of Utah. It is true that over 90% of the materials were manufactured outside of this state, but only about 70% of them were of Riley Stoker's craftsmanship. The total cost to the Utah purchasers was $4,687,104. Approximately 23%, or over a million dollars was expended for activities carried on within this state. The time necessary for constructing each plant was about two years, and the total time required to complete these jobs was over six years. During that time Riley Stoker constantly had from 20 to 75 employees here engaged in that business. It maintained an office, kept records for employees' payroll, and through its employees had the advantage of many services supported by taxation of residents of this state, including fire and police protection, the use of the roads, the employer-employee service administered by the Industrial Commission, educational facilities, public libraries, water, sewage disposals, and all of the other public services.

The principles applied in the case of Stone v. York Ice Machinery Corporation [13] seem applicable here and persuasively support the position of the Utah Tax Commission. The York Manufacturing Company of Delaware sold and undertook to install, adjust and test air conditioning systems placed in the state of Mississippi. It took from one to five months to complete each contract, and the costs of installation varied from seven to twelve per cent of the total contract price. The Supreme Court of Mississippi held that a proportionate amount of the activity was *intrastate* in character and that the state properly could impose a tax upon the privilege of enjoying that type of business therein, using this language:

"Where such a substantial portion of the contract for the sale, installation, adjustment and testing of the air-conditioning systems involved in this case was performed in this State, as a condition precedent to its final acceptance by the purchaser * * * the contention of the appellee [taxpayer] as to its nonliability for the taxes in question, if sustained, would work an unjust discrimination against those residing in this State who may undertake to manufacture and install machinery and equipment * * * ." [14]

We believe and hold that the activities of the Riley Stoker Corporation in assembling and constructing the steam gener-

13. 193 Miss. 638, 10 So.2d 380.

14. 10 So.2d at page 385.

ating plants within this State were of such a nature, and amounted to such a substantial portion of these transactions as to go beyond that which should be classified as inherently a part of, or merely incidental to interstate commerce, so that the Utah State Tax Commission could properly determine that its activities constituted doing business within this State, and that consequently, it correctly assessed the Utah State Corporate Franchise tax for the portion of the contracts represented by activities carried on here.

McDONOUGH, C. J., and WADE and WORTHEN, JJ., concur.

HENRIOD, Justice.

I concur for the reason that the Tax Commission based its assessment, not on the entire activity of the company in performing the contract, but upon that part of the contract, the performance of which reasonably could be said to be intrastate, according to available information, and that, at least in the writer's opinion, the amount levied reflected a reasonable and even modest appraisal of the intrastate activity mentioned. These cases are difficult, and the authorities hardly reconcilable. Each case must be determined on its own facts, and whether an activity is determined to be intrastate or interstate commerce, or a combination of both, and to what ex-

tent are factual variables with which the judiciary must wrestle to the best of its ability, admitting that its decisions may not in every instance reflect complete infallibility. I believe that the result we have reached is based fairly and reasonably on the record before us and in accordance with principles generally accepted.