## STONE, CHAIRMAN OF STATE TAX COMMISSION, *v.* GENERAL CONTRACT PURCHASE CORPORATION.

(In Banc.   April 27, 1942.   Suggestion of Error Overruled June 8, 1942.)

[7 So. (2d) 806.   No. 34958.]

Greek L. Rice, Attorney General, by Geo. H. Ethridge, Assistant Attorney General, J. H. Sumrall, of Jackson, and R. W. Heidelberg, of Hattiesburg, for A. H. Stone, Chairman State Tax Commission.

**William Harold Cox,** of Jackson, for General Contract Purchase Corporation.

Argued orally by **R. W. Heidelberg, J. H. Sumrall** and **Geo. H. Ethridge,** for appellant, and by **Harold Cox,** for appellee.

**Smith, C. J.,** delivered the opinion of the court.

The General Contract Purchase Corporation, a Missouri corporation, is engaged in financing retail dealers of automobiles. This, it does under agreements so to do with the retail dealers, by paying manufactures or distributors of automobiles purchased by the retail dealer and taking his notes therefor together with a contract that the title to the automobiles shall vest and remain in the appellee until the dealer repays the money advanced him by the appellee for their purchase; and when the dealer sells an automobile taking the purchaser's note or notes therefor under a contract reserving the title thereto in the dealer until the note or notes are paid, the appellee purchases these notes from the dealer and thereafter collects the payments due thereon. It maintains an office or place of business at Jackson, Mississippi, and another at Memphis, Tennessee; its officers and employees at the one place having no supervision or control over its officers and employees at the other. Both offices acquire these promissory notes given to and by retail dealers in automobiles in Mississippi, where the automobiles are and remain. The appellee's agreement with these dealers

does not obligate it to purchase all of the notes taken by them for automobiles sold but only such as it approves. The notes, with their accompanying retain-title contracts acquired by the appellee's Memphis office, are delivered to it by the dealer in person, by agent, or through the U. S. Mail. Those purchased by its Jackson office, are so delivered to it there. The Memphis office, when necessary, sends its agents into Mississippi to collect from the makers of these notes the payments due thereon; to ascertain the continued existence and condition of the automobiles securing these payments, and to enforce the liens thereon when necessary.

Chapter 110, Laws of 1940, levies "an annual statewide privilege tax upon every person, firm, corporation, or association . . . doing a business of purchasing, discounting, or otherwise acquiring notes, trust receipts, or other forms of indebtedness secured by liens, in the form of mortgages, retain-title or purchase contracts, or other liens, upon motor vehicles, furniture, refrigerators, . . . the amount of said tax to bear a direct relationship to the value of the securities held, owned, or acquired by such person, firm, corporation or association, and exacted in return for the protection afforded by the government and laws of this state in the enjoyment of such ownership and rights acquired thereby; the tax to be computed by application of the rate hereinafter set out to the total value of such securities." Sec. 1.

When the appellant, who is charged with the duty of collecting the tax, called on the appellee for the payment of the tax due by it, he included in the measure thereof the value of the securities acquired by the appellee at its Memphis office. The appellee paid the tax, and filed two suits in the court below enjoining the appellant from paying the tax into the state treasury and seeking to recover it from him. One of these suits deals only with the securities acquired at the appellee's Memphis office and the

other with those acquried at its Jackson office. These suits were consolidated and tried together in the court below, resulting in a decree dismissing the appellee's bill dealing with its Jackson, Mississippi, securities and awarding it the relief prayed for in the bill dealing with its Memphis, Tennessee, securities. Both sides appeal.

We are to decide:

1. Whether this tax is a privilege tax or one on property, it being admitted that if it is on property it runs counter to Section 112 of the State's Constitution.

2. If it is a privilege tax does the statute violate the due process and equality provisions of the Fourteenth Amendment to the Federal Constitution, because of its provisions exempting banks, persons engaged in a general mercantile business, and dealers engaged in selling the kind of property described in the statute; from the payment of the tax; forbidding the taxpayer to "pass the tax imposed by this act on to the consumer or dealer," and forbidding persons liable for the tax and failing to pay it from access to the state's courts for the collection of the notes or the enforcement of the liens securing them.

3. Whether the statute applies to persons and corporations who, at a place of business in another state, acquire securities of the character described in the statute, but whose agents come into this state, collect the payments due on these notes, ascertain the existence and condition of the property securing the payments and when necessary take possession of the property in order to enforce the lien thereon.

(a) "The distinction between a property tax and a license or privilege tax imposed for revenue is that the function of the property tax is to raise revenue by virtue of the fact that the property is within the jurisdiction of the taxing power, and no condition or restriction is imposed thereby upon the use of the property taxed, while the license or privilege tax, even though also passed to raise revenue, is imposed upon the right to exer-

cise a privilege, and its payment is made a condition to the exercise, or continuance in the exercise of the privilege, business, or vocation involved. . . . If in its nature a tax is a license or privilege tax, it does not become a property tax simply because it is proportioned in amount to the value of the property used in connection with the privilege which is enacted.'' 33 Am. Jur., ''Licenses,'' section 3; State v. Lawrence, 108 Miss. 291, 66 So. 745, Ann. Cas.1917E, 322; Southern Package Corp. v. State Tax Commission, 174 Miss. 212, 164 So. 45. Tested by this rule, it will be readily seen that this tax is a privilege and not a property tax. In Thompson v. Kreutzer, 112 Miss. 165, 72 So. 891, and Barnes v. Jones, 139 Miss. 675, 103 So. 773, 43 A. L. R. 673, invoked by the appellee, the tax on the ownership of the property, without reference to any activity in connection with it. In Thompson v. McLeod, 112 Miss. 383, 73 So. 193, L. R. A. 1918C, 893, Ann. Cas. 1918A, 674, a border-line case, the activity taxed (extracting turpentine from trees grown on land) was one of the rights inherent in the ownership of the land, and therefore the tax was held to be, in effect, a tax on the land itself. If it be said that that case departed from the rule above announced, we must decline to build on it, and will confine it to its own facts.

(b) It will not be necessary for us to here determine the constitutional validity of any of the provisions of this statute set forth under paragraph numbered 2 hereof, for if they should be held to be invalid, that fact would not render the statute void, but it would be enforced as if these provisions had not appeared therein, both under the general rule therefor, and Section 12 of this statute, which expressly so declares.

(c) This brings us to the third of these questions. The appellee's contention in this connection is that promissory notes acquired by its Memphis office cannot be taken into consideration in computing the tax due by it for the reason that as to those notes it did no business

in Mississippi. Acquiring these notes was one of the things necessary to be done in the prosecution of the appellee's business, but it was not the only one, for they must either be sold or collected, and when necessary the liens securing their payment must be enforced. All of the things necessary for the prosecution of a business need not take place within the state imposing a privilege tax thereon before the tax can be exacted. All that is necessary is that something be done or take place within the taxing state that is incident to or substantially connected with the prosecution of the business. State of Wisconsin v. J. C. Penney Co., 311 U. S. 435, 61 S. Ct. 246, 85 L. Ed. 267, 130 A. L. R. 1229. Neither the common law definition of what constitutes doing business nor that of former decisions of this court control here, for the legislature, as it had the right to do (Mathison v. Brister, 166 Miss. 67, 145 So. 358; 59 C. J. 1036), has set forth in the statute what is meant by the words ''doing business'' and ''doing a business'' and has said that they ''shall mean and include any and every act, power or privilege exercised or enjoyed in this state as an incident to, or in connection with, the lending of money, acquiring or owning notes or other forms of indebtedness secured as aforesaid by liens on tangible personal property located in the state of Mississippi, which liens may be enforced or indebtedness collected under the laws and government of this state; and the enjoyment of any and every right or privilege as owner of such securities on account of which said act, right, power or privilege so exercised or enjoyed, the state of Mississippi can lawfully levy and collect a privilege tax.'' One of the things that justifies the appellee in purchasing these promisory notes is that they are secured by liens on property in this state, which liens are valid for the reason that they are recognized, protected by, and can be enforced under the laws of this state. Without this protection the appellee's business insofar as it embraces Mississippi securities would be of little value

and it is in return for this protection, as Section 1 of the statute declares, that the tax is exacted. It is, therefore, exacted in return for something substantial given by the state and "bears fiscal relation to protection, opportunities and benefits given by the state." State of Wisconsin v. J. C. Penney Co., supra [311 U. S. 435, 61 S. Ct. 250, 85 L. Ed. 267, 130 A. L. R. 1229]. In addition to this, and sufficient of itself to sustain the exaction of the tax, as to securities acquired by the appellee at Memphis, is the fact that its agents come into this state, collect the payments due on the notes, ascertain the existence and condition if the property securing the payments, and when necessary take possession of the property in order to enforce the appellee's lien thereon. These activities of its agents, which the state protects, are necessary incidents to the successful prosecution of the appellee's business.

That the necessity for the protection of the appellee's business in both of the above aspects arises when, but not until, it acquires the securities, is of no consequence although they are acquired in another state. "The fact that a tax is contingent upon events brought to pass without a state does not destroy the nexus between such a tax and transactions within a state for which the tax is an exaction." State of Wisconsin v. J. C. Penney Co., supra.

If it be said that the appellee's agreement with automobile dealers in this state contemplates the transportation of promissory notes from Mississippi into Tennessee and therefore the transactions are within interstate commerce, as to which we express no opinion, that fact is of no consequence here. When the transportation of these notes ended and they were delivered to the appellee, this interstate commerce, if such there here is, ended and all of the matters above set out that warrant the exaction of the tax either continued or took place thereafter. Moreover, "it was not the pur-

pose of the commerce clause to relieve those engaged in interstate commerce of their just share of state tax burdens, merely because an incidental or consequential effect of the tax is an increase in the cost of doing the business.'' McGoldrick v. Berwind-White Coal Min. Co., 309 U. S. 33, 60 S. Ct. 388, 392, 84 L. Ed. 565, 128 A. L. R. 876. In addition, the exaction of this tax imposes the same burden on the business taxed whether prosecuted by means of intra or interstate commerce, or both, and ''a tax or other burden obviously does not discriminate against interstate commerce where 'equality is the theme.''' Nelson v. Sears, Roebuck & Co., 312 U. S. 359, 61 S. Ct. 586, 589, 85 L. Ed. 888, 132 A. L. R. 475; McGoldrick v. Berwind-White Coal Min. Co., supra; Stone v. Interstate Natural Gas Co., 5 Cir., 103 F.2d 544, affirmed by the Supreme court of the United States, 308 U. S. 522, 60 S. Ct. 292, 84 L. Ed. 442, on the authority of Southern Natural Gas Corp. v. State of Alabama, 301 U. S. 148, 57 S. Ct. 696, 700, 81 L. Ed. 970. ''There is no showing [here] of any direct burden on interstate commerce, the effect upon that commerce [if any] being incidental and remote, not differing in this respect from the effect of ordinary ad valorem taxation of property within the State.'' Southern Natural Gas Corp. v. State of Alabama, supra.

The decree dismissing the appellee's bill of complaint as to the tax exacted from it on the value of the securities acquired by it at Jackson, Mississippi, will be affirmed, but the decree awarding it the relief prayed for as to the securities acquired by it at Memphis, Tennessee, will be reversed, and that bill will be dismissed. So ordered.

**Alexander, J.,** delivered a specially concurring opinion.

I concur in the result reached in the majority opinion. In view of the controlling fact that appellee is duly au-

thorized to do business in this state and is so engaged, I do not find relevant the reasons asserted to justify imposition of the privilege tax therefor.

There is no question whether appellee is engaged in this state in the "business of purchasing, discounting, or otherwise acquiring notes, trust receipts, or other forms of indebtedness secured by liens, in the form of mortgages, retained-title or purchase contracts . . . ," under section 1 of Chapter 110, Laws 1940. Its liability thus fixed needs no further justification, and it is immaterial, insofar as fixing liability for privilege tax is concerned, that some of the liens on property located in the state were acquired outside the state. Liability for tax is referable to section 1 of the act which rests upon a conventional doing of business in this state. There is no need to invoke the artificial definition set forth in section 5.

In computing the amount of the tax (liability for which having arisen because doing business in this state) the aliquot share of the corporation's total business is estimated and based upon "the total amount of indebtedness secured by tangible property located in the state of Mississippi." Sec. 2. So long as this basis of computation exacts an amount that is reasonable, by well established tests, the reason for adoption of such basis is immaterial. Beyond question the state would imperil its own dignity by justifying its exaction as in consideration for the "privilege" available to appellee to employ legal processes in enforcing its rights or enjoy access to its courts. It may not exact tribute for that which it may not withhold. These are privileges not granted but protected by our Constitution, secs. 24, 25, Const. 1890; sec. 14, Amendments to Const. U. S. It may deny access to its courts to any corporation which fails to qualify but once it subjects itself to legal citizenship, it accedes to all the rights and privileges of other citizens.

It is true that section 1 of the Act of 1940 provides that

"the amount of said tax to bear a direct relationship to the value of the securities held, owned, or acquired," so that in computing a liability otherwise incurred such basis is reasonable. It is immaterial that the legislature sought further to justify what it otherwise had the un-doubted right to do, by explaining (sec. 1) that the tax is "exacted in return for the protection afforded by the government and laws of this state in the enjoyment of such ownership and rights acquired thereby." More properly the tax is exacted by the state for the privilege of doing business in this state. On the other hand, the taxpayer exacts protection in the enjoyment of his rights in return for the tax so paid.

Appellee is doing business in this state and is liable to taxation for such privilege. It is immaterial that the amount of such tax is computed upon a basis which may take into account tangible property located inside the state, the liens upon which were negotiated outside the state. Between taxing a nonresident because of interstate business done in this state and taxing a resident upon the basis of business done outside the state, there is a great gulf comparable only to the distance between unconstitutionality and constitutionality. Most of the confusion apparent in the able arguments arises from a failure to separate the basis of initial liability for a privilege tax from the bases employed in computing its amount.

**Griffith, J.**, concurs in the foregoing opinion.