Lincoln Nat. Life Ins. Co. *v*. State Tax Commission.

(In Banc.   Jan. 24, 1944.   Suggestion of Error Overruled Feb. 28, 1944.)

[16 So. (2d) 369.   No. 35485.]

Wells, Wells, Lipscomb & Newman, of Jackson, and Clyde J. Cover, of Fort Wayne, Ind., for appellant.

84

**J. H. Sumrall,** of Jackson, for appellee.

Argued orally by **Hubert Lipscomb**, for appellant, and by **J. H. Sumrall**, for appellee.

**Alexander, J.**, delivered the opinion of the court.

Appellant is a nonresident insurance company licensed and authorized to do business in this state. In response to an assessment and demand by the appellee for additional income taxes for the years 1937 to 1940 inclusive, it filed its petition in the chancery court to review and cancel the assessment. The chancellor sustained a demurrer to the petition and awarded decree for the income taxes alleged to be due for those years respectively, whence this appeal.

The petition alleges that appellant was engaged chiefly in the business of reinsurance although it sold a relatively small amount of life insurance to residents of this state. As to the latter business, proper returns were made and taxes paid. The controversy involves the liability of appellant for income taxes upon premiums received under its contracts of reinsurance issued to both domestic and foreign insurance companies. The applicable statute is Section 11, Chapter 120, Laws 1934, as amended by Chapter 151, sec. 3, Laws 1936.

In its business of reinsurance, appellant acts pursuant to certain contracts or treaties with other insurance companies. These treaties provide that the original insurer may cede to appellant a portion of such individual risks as it elects. Such contracts are of two types. Under the provisions of one type, known as the automatic type, the

reinsurer is bound to accept such portion of any risk contracted by the original insurer as the latter may deem beyond its desired exposure and which falls within the terms of the treaty agreement. Under the other type, designated facultative, the reinsurer has the option of accepting such tendered part of the original insurer's risk.

It is established beyond the necessity for citation that there is no privity of contract between the reinsurer and the individual whose life is insured. It is further settled that the reinsurance contract is one of indemnity. Moseley v. Liverpool L. & G. Ins. Company, 104 Miss. 326, 61 So. 428.

Our concern is directed solely to the jurisdiction of the state to exact income tax from appellant with respect to its premiums of reinsurance of domestic and foreign licensed insurers. As to the former, we shall not expand the discussion of those principles by which this authority is sustained nor the stages of their evolution as legitimate bases for state revenue. The privileges accorded to appellant as part of its license to do business in this state, plus the fact that the writing of reinsurance constitutes the procuring and doing of such business in this state, are now established foundations for such jurisdiction with respect to the reinsurance of domestic companies. Stone v. General Electric Cont. Corporation, 193 Miss. 317, 7 So. (2d) 811; Nelson v. Sears, Roebuck & Company, 312 U. S. 359, 61 S. Ct. 586, 85 L. Ed. 888, 132 A. L. R. 475; McGoldrick v. Berwind-White Coal Min. Company, 309 U. S. 33, 60 S. Ct. 388, 84 L. Ed. 565, 128 A. L. R. 876; Wisconsin v. J. C. Penney Company, 311 U. S. 435, 61 S. Ct. 246, 85 L. Ed. 271, 130 A. L. R. 1229. Had this been the extent of relief prayed for, the demurrer would properly have been sustained.

The petition avers, however, that appellant maintains treaties with companies "both domestic and foreign." We are called upon, therefore, to examine whether there is jurisdiction to tax appellant with respect to its rein-

surance of licensed foreign insurers. These latter would include by their generalization both foreign licensed and unlicensed companies writing insurance upon lives in this state. We forego anxiety for the incidental fiscal results which may follow from the denial or the recognition of state jurisdiction. Such results involve an application of Section 108, Chapter 20, Laws 1935, Ex. Sess., whereby · privilege license taxes may be apportioned between the original insurer and the reinsurer and lead into a digression which is at variance with the immediate inquiry. The hub of the discussion is jurisdiction to impose the income tax which is to be found not solely in the presence of the licensed foreign company in this state for the purpose of doing business here but whether in respect to the particular tax upon its reinsurance premiums it is in fact doing such business.

As stated in Connecticut Gen. Life Ins. Company v. Johnson, 303 U. S. 77, 58 S. Ct. 436, 438, 82 L. Ed. 673: "But the limits of the state's legislative jurisdiction to tax, prescribed by the Fourteenth Amendment, are to be ascertained by reference to the incidence of the tax upon its objects rather than the ultimate thrust of the economic benefits and burdens of transactions within the state. As a matter of convenience and certainty, and to secure a practically just operation of the constitutional prohibition, we look to the state power to control the objects of the tax as marking the boundaries of the power to lay it. Hence it is that a state which controls the property and activities within its boundaries of a foreign corporation admitted to do business there may tax them. But the due process clause denies to the state power to tax or regulate the corporation's property and activities elsewhere."

Under the state of the pleadings, we must accept the fact that the reinsurance contracted by such licensed foreign insurer with appellant is effected through the mails and is negotiated and completed wholly without the state. In this aspect, this case is for all practical pur-

poses identical with the above cited case wherein it is further stated: "The grant by the state of the privilege of doing business there and its consequent authority to tax the privilege do not withdraw from the protection of the due process clause the privilege, which California does not grant, of doing business elsewhere. . . . Even though a tax on the privilege of doing business within the state in insuring residents and risks within it may be measured by the premiums collected, including those mailed to the home office without the state, Equitable Life Assur. Soc. v. Pennsylvania, 238 U. S. 143, 35 S. Ct. 829, 59 L. Ed. 1239, and though the writing of policies without the state insuring residents and risks within it is taxable because within the granted privilege, Compañia General de Tabacos v. Collector of Internal Revenue, supra (275 U. S. 87, 98, 48 S. Ct. 100, 72 L. Ed. 182), there is no basis for saying that reinsurance which does not run to the original insured, and which from its inception to its termination involves no action taken within California, even the settlement and adjustment of claims, is embraced in any privilege granted by that state. . . . All that appellant did in effecting the reinsurance was done without the state and for its transaction no privilege or license by California was needful. The tax cannot be sustained either as laid on property, business done, or transactions carried on within the state, or as a tax on a privilege granted by the state."

The attempt to distinguish the foregoing case from Wisconsin v. J. C. Penny Company, 311 U. S. 435, 61 S. Ct. 246, 249, 85 L. Ed. 267, 130 A. L. R. 1229, is not persuasive. No distinction in principle may be predicated upon the incident that the California case involved a privilege tax computed upon premiums while the instant case deals with an income tax so computed. Both are excise taxes, and more to the point, both are taxes. As stated in the Wisconsin case: "The descriptive pigeon-hole into which a state court puts a tax is of no moment in determining the constitutional significance of the exaction."

See also Lawrence v. State Tax Commission, 286 U. S. 276, 280, 52 S. Ct. 556, 76 L. Ed. 1102, 1105, 87 A. L. R. 374. The Wisconsin case, while authority for our holding with respect to the reinsurance of domestic companies, may not be projected beyond these limits. Indeed, in a well reasoned dissent in which three other justices concurred, it was stoutly maintained that Connecticut Gen. Life Ins. Company v. Johnson required a contrary finding in accord therewith.

It is not in point that the history of the completed treaty agreement includes the incident that it originated in the writing of a life policy upon a resident of this state. Dissent from this conclusion would mean that if appellant chose later to subdivide its risk of indemnity with a third insurer, or a succession thereof, in a distant state, the liability would still be held by a chain whose initial link was the policy upon a Mississippi resident. A retreat toward absurdity could be forced by extending the lines of this reasoning to include the assumption that appellant, for purposes of its own, sought to have its entire business underwritten by a third reinsurer. Would the latter be liable for income tax in every state in the Union where the insured individuals may be found? The language in Wisconsin v. J. C. Penney Company, supra, that ''The fact that a tax is contingent upon events brought to pass without a state does not destroy the nexus between such a tax and transactions within a state for which the tax is an exaction'' must be read in connection with that of the Johnson case wherein it was stated: ''Appellant, by its reinsurance contracts, undertook only to indemnify the insured companies against loss upon their policies written in California. The reinsurance involved no transactions or relationship between appellant and those originally insured, and called for no act in California. . . . Apart from the facts that appellant was privileged to do business in California, and that the risks reinsured were originally insured against in that state by companies also authorized to do business there,

California had no relationship to appellant or to the re-insurance contracts. No act in the course of their formation, performance, or discharge, took place there. The performance of those acts was not dependent upon any privilege or authority granted by it, and California laws afforded to them no protection."

Further extension of the holding in Stone v. Gen'l Contract Purchase Corporation, 193 Miss. 301, 7 So. (2d) 806, 140 A. L. R. 1029, and Stone v. Gen'l Electric Contr. Corporation, 193 Miss. 317, 7 So. (2d) 811, 815, is limited by their anchorage to the circumstances that the statute there construed defined the particular transactions as "doing business," and that the privilege of doing such business included and required the acquisition of lien notes in this state and the protected right there to enforce collect them. Moreover, the tax there enforced was held "not a tax on the particular transactions, whether they took place in the State of Mississippi in interstate commerce or wholly without the state, but the tax is on the privilege of engaging in those activities which are defined in the statute." Stone v. Gen'l Electric Contracts Corporation, supra. Again the finding that appellant's reinsurance contracts are made outside the state and are neither protected nor controlled by it reads out of those cases any possible relevancy.

The crucial test remains whether the appellant, by undertaking to indemnify a licensed foreign insurance company, was thereby doing business in Mississippi, not whether it was procuring business from one which had done such business. There is no inconsistency in exacting a license tax for the privilege of doing business in this state and restricting an income tax to business actually done here. The Act itself (Par. (c) of Sec. 11, Ch. 120, Laws 1934) recognizes a distinction between income derived from sources partly within and partly without the state. As already pointed out, the reinsurance contract is a separate and separable undertaking to which the original insured is not privy and in which he acquires

no rights.  There is therefore a want of jurisdiction to tax appellant with respect to such reinsurance premiums. Any construction of the statute which would extend it this far would import into it a constitutional infirmity. In other words, the statute is not here applicable.  What we have said applies, a fortiori, to reinsurance undertaken by appellant with an unlicensed foreign company.

It follows that the petition, being good in part, should not have been dismissed under the demurrer.  The cause is reversed for further proceedings in accord with these conclusions.

Reversed and remanded.