## STATE TAX COMMISSION *v.* MEMPHIS NATURAL GAS CO.

(In Banc. Oct. 9, 1944. On Motion for Final Judgment Oct. 23, 1944).

[19 So. (2d) 477. No. 35692.]

W. D. Conn, Jr., of Jackson, for appellant.

Green & Green, of Jackson, and Canada, Russell & Turner, of Memphis, Tenn., for appellee.

588

590

Argued orally by **W. D. Conn, Jr.**, for appellant, and by **Garner Green**, for appellee.

**McGehee, J.**, delivered the opinion of the court.

The petition of the Memphis Natural Gas Company, a Delaware corporation, filed herein against the State Tax Commission seeks a judicial review of certain tax assessments levied by such Commission under the state income tax act (Chapter 120, Laws of 1934 and amendments thereto), on the net income of the petitioner for the years 1937-1941, inclusive, attributable to the ownership and use of the property of such Gas Company within this state devoted exclusively to the business of interstate commerce, it being claimed that such imposition of taxes violated the commerce clause of the Federal Constitution, Article I, Section VIII thereof.

The petition concedes that if the petitioner is liable for the taxes levied and assessed by the State Tax Commission against it for said years, the amount of such net income taxes and the accrued interest thereon would aggregate the sum thus demanded; that the formula used by the taxing authorities in arriving at the net income of the petitioner attributable to its ownership of property in this state during each of said years, and in allocating the same, was a proper one; and that such assessment was duly and regularly made and is in all respects true and correct if any tax was due.

The State Tax Commission demurred to such petition for a judicial review of this assessment. The demurrer was overruled and the State Tax Commission having declined to plead further, a final judgment was rendered

by the court below adjudicating that the petitioner was not liable for such taxes. From this judgment the State Tax Commission has prosecuted this appeal.

The net income on which the tax is claimed was derived from the sale of natural gas at wholesale to the Mississippi Power and Light Company, a non-resident corporation doing business in this state. The gas was delivered at various points in Mississippi along the pipe line of petitioner Memphis Natural Gas Company, which extends from the Monroe, Louisiana, gas field through Arkansas and Mississippi and then terminates at Memphis in the State of Tennessee. The gas thus sold by the petitioner was delivered to the said purchaser from the main pipe line at or near thirteen municipalities within this state under a contract made in a foreign state and was thereupon sold and distributed at retail by the purchaser to its own customers in such municipalities.

The main contentions of the appellee Gas Company are: First, that Chapter 120, Laws of 1934, and amendments thereto, was not intended to apply to foreign corporations doing an interstate business exclusively and whose presence or ownership of property in this state is wholly to further its interstate business. Second, that the State of Mississippi may not levy a tax, although nondiscriminatory, upon the net earnings of a foreign corporation attributable to its activities in this state and resulting from its ownership of property in this state, where the petitioner's property in this state is used exclusively in the furtherance of its interstate business, without violating the commerce clause of the Constitution, Article I, Section VIII thereof.

Section 3(1), Chapter 120, Laws of 1934, provides:

"There is hereby assessed and levied to be collected and paid as hereinafter provided for the calendar year 1934 and for each calendar year thereafter, upon the entire net income of every resident individual, corporation, association, trust or estate, in excess of the credits provided, a tax at the following rate: . . . "

The last paragraph of the same section then provides:

"A like tax is hereby imposed to be assessed, collected and paid annually at the rates specified in this section and as hereinafter provided upon and with respect to the entire net income, from all property owned and from every business, trade or occupation carried on in this state by individuals, corporations, partnerships, trusts or estates, not residents of the state of Mississippi."

Section 11(1) of the same act provides:

"In the case of foreign corporations or of a non-resident or citizen of a foreign country the following items of gross income shall be treated as income from sources within the state.

"(a) . . . rentals or royalties from property or any interest in property within the state, and income from the operation, or ownership of any property within the state; . . . "

It will be readily seen that so far as the language of the statute is concerned there can be no question as to whether or not it is sufficient to impose the tax here involved, but it is urged by the appellee that it could not have been the intention of the legislature in enacting the said income tax law of 1934 to impose such taxes upon a foreign corporation engaged exclusively in interstate business in Mississippi, in view of the decisions of the State and Federal Supreme Courts at that time, as well as decisions of Federal District Judge composing a special court in three cases of litigation between the Interstate Natural Gas Company and the said State Tax Commission involving certain privilege and franchise taxes and the state income tax, respectively, under the Mississippi Code of 1930, as to whether or not such a tax would contravene the commerce clause of the Federal Constitution. In other words, the appellee invokes as a principle of construction that statutes are to be construed as they were intended to be understood when they were passed in the light of court decisions existing at such time.

Assuming for the purpose of this decision that, although the language employed in the above quoted sections of Chapter 120, Laws of 1934, is plain and unambiguous, we are entitled to resort to an examination of the court decisions existing at the time of the enactment of this statute to determine whether the legislature really intended to impose a tax on the net income of a foreign corporation engaged enclusively in interstate business in Mississippi, let us review what the courts had held at that time on the question of whether or not the imposition of such a tax would in fact contravene the commerce clause of the Federal Constitution here involved.

In the case of State ex rel. Knox v. Gulf, M. & N. R. Co., 138 Miss. 70, 104, So. 689, 693, decided by this Court in March 1925, it was said:

"The income of the Gulf, Mobile & Northern Railroad Company is derived from both inter and intrastate commerce, and its contention is that a tax by the state on that portion of its income derived from interstate commerce is a burden on such commerce within the meaning of this clause of the federal Constitution. If the tax were on gross income a serious question would here be presented, but it is not on gross, but on net, income, and a tax on net income, derived in whole or in part from interstate commerce, is not a burden thereon within the meaning of this clause of the federal Constitution, as pointed out by the Supreme Court of the United States in [United States] Glue Co. v. Oak Creek, 247 U. S. 321, 38 S. Ct. 499, 62 L. Ed. 1135, Ann. Cas. 1918E, 748; Underwood Typewriter Co. v. Chamberlain, 254 U. S. 113, 41 S. Ct. 45, 65 L. Ed. [165], 169; Shaffer v. Carter, 252 U. S. 37, 40 S. Ct. 221, 64 L. Ed. 445; Atlantic Coast Line R. Co. v. Daughton, 262 U. S. 413, 43 S. Ct. 620, 67 L. Ed. 1051."

At the time of the decision of this Court in the Knox Case, supra, the Supreme Court of the United States had said in the case of United States Glue Co. v. Oak Creek [247 U. S. 321, 38 S. Ct. 500, 62 L. Ed. 1135, Ann. Cas. 1918E, 748], cited in our court's opinion, that:

"Stated concisely, the question is whether a state, in levying a general income tax upon the gains and profits of a domestic corporation, may include in the computation the net income derived from transactions in interstate commerce without contravening the commerce clause of the Constitution of the United States."

Thereupon, the Court undertook to lay down the basis of distinction between direct and indirect burdens on interstate commerce, after citing the case of Peck & Co. v. Lowe, 247 U. S. 165, 38 S. Ct. 432, 62 L. Ed. 1049, as its authority therefor, and said:

"The distinction between a direct and an indirect burden by way of tax or duty was developed (in the Peck & Co. v. Lowe case), and it was shown that an income tax laid generally on net incomes, not on income from exportation because of its source or in the way of discrimination, but just as it was laid on other income, and affecting only the net receipts from exportation after all expenses were paid and losses adjusted and the recipient of the income was free to use it as he chose, was only an indirect burden.

"The difference in effect between a tax measured by gross receipts and one measured by net income, recognized by our decisions, is manifest and substantial, and it affords a convenient and workable basis of distinction between a direct and immediate burden upon the business affected and a charge that is only indirect and incidental. A tax upon gross receipts affects each transaction in proportion to its magnitude and irrespective of whether it is profitable or otherwise. Conceivably it may be sufficient to make the difference between profit and loss, or to so diminish the profit as to impede or discourage the conduct of the commerce. A tax upon the net profits has not the same deterrent effect, since it does not arise at all unless a gain is shown over and above expenses and losses, and the tax cannot be heavy unless the profits are large."

In discussing the effect of a tax upon net incomes, the Court then said:

"Such a tax, when imposed upon net incomes from whatever source arising, is but a method of distributing the cost of government, like a tax upon property, or upon franchises treated as property; and if there be no discrimination against interstate commerce either in admeasurement of the tax or in the means adopted for enforcing it, it constitutes one of the ordinary and general burdens of government, from which persons and corporations otherwise subject to the jurisdiction of the states are not. exempted by the federal Constitution because they happen to be engaged in commerce among the states.

"And so we hold that the Wisconsin income tax law, as applied to the plaintiff in the case before us, cannot be deemed to be so direct a burden upon plaintiff's interstate business as to amount to an unconstitutional interference with or regulation of commerce among the states. It was measured not by the gross receipts, but by the net proceeds from this part of plaintiff's business, along with a like imposition upon its income derived from other sources, and in the same way that other corporations doing business within the state are taxed upon that proportion of their income derived from business transacted and property located within the state, whatever the nature of their business."

Also in Shaffer v. Carter, cited in the opinion of our Court in the Knox case, supra, the Supreme Court of the United States had said [252 U. S. 37, 40 S. Ct. 225, 64 L. Ed. 445]:

"And we deem it clear, under principle as well as authority, that just as a state may impose general income taxes upon its own citizens and residents whose persons are subject to its control, it may, as a necessary consequence, levy a duty of like character, and not more onerous in its effect, upon incomes accruing to nonresidents from their property or business within the state, or their occupations carried on therein, enforcing payment, so

far as it can, by the exercise of a just control over persons and property within its borders."

Further on, the Court said:

"It is urged that, regarding the tax as imposed upon the business conducted within the state, it amounts in the case of appellant's business to a burden upon interstate commerce, because the products of his oil operations are shipped out of the state. Assuming that it fairly appears that his method of business constitutes interstate commerce, it is sufficient to say that the tax is imposed not upon the gross receipts, as in Crew Levick Co. v. Pennsylvania, 245 U. S. 292, 38 S. Ct. 126, 62 L. Ed. 295, but only upon the net proceeds, and is plainly sustainable, even if it includes net gains from interstate commerce." Citing United States Glue Co. v. Oak Creek, supra, and other cases.

It is true that, as suggested by counsel for appellee, in the case of United States Glue Co. v. Oak Creek, supra, the taxpayer was a domestic corporation engaged in interstate commerce, whereas in the case at bar the appellee is a foreign corporation, and is not present in this state otherwise than by the existence of its pipe line from which gas is delivered through meters at the several municipalities to the wholesale purchaser; also, that in the case of Shaffer v. Carter, supra, the taxpayer Shaffer was a nonresident individual instead of a corporation and was apparently engaged in both intra and interstate commerce, and wherein the Court held that an income tax upon his interstate business could be assessed, saying, among other things, that: "It is sufficient to say that the tax is imposed not upon the gross receipts . . . but only upon the net proceeds, and is plainly sustainable, even if it includes net gains from interstate commerce." Citing authorities.

Moreover, when our state income tax act (Chapter 120, Laws of 1934) was enacted on March 14, 1934, the Supreme Court of North Carolina in the case of Maxwell v. Kent-

Coffey Mfg. Co., 204 N. C. 365, 168 S. E. 397, 400, 90 A. L. R. 476, had held that:

"A state may not impose any tax which results in laying a direct burden upon interstate commerce. But a state may, in levying a general income tax, include within the taxable status so much of net income derived from interstate commerce as is properly apportionable to operations or business within the state." And cited in support of this position, United States Glue Co. v. Oak Creek, supra; Shaffer v. Carter, supra; and Travis v. Yale & Towne Mfg. Co., 252 U. S. 60, 40 S. Ct. 228, 64 L. Ed. 460. Later in the opinion, the Court stated:

"A state may tax the net income of a foreign corporation doing business within its taxing jurisdiction, and may include therein all portions of such net income arising from interstate commerce, properly apportionable to the state. Underwood Typewriter Co. v. Chamberlain [supra]; Bass, Ratcliff & Gretton v. State Tax Commission, 266 U. S. 271, 45 S. Ct. 82, 69 L. Ed. 282; Maxwell v. Hans Rees' Sons, 199 N. C. 42, 153 S. E. 850; [Hans Rees' Sons v. State of North Carolina ex rel. Maxwell], 283 U. S. 123, 51 S. Ct. 385, 75 L. Ed. 879."

Thereupon the case of Maxwell v. Kent-Coffey Mfg. Co., supra, was appealed to the Supreme Court of the United States and was there affirmed by the Court on January 22, 1934, when it was held that: "This case is controlled by the decision in Underwood Typewriter Co. v. Chamberlain, 254 U. S. 113, 41 S. Ct. 45, 65 L. Ed. 165, . . ." 291 U. S. 642, 54 S. Ct. 437, 78 L. Ed. 1040. It had been held in the Underwood Typewriter Co. case [254 U. S. 113, 41 S. Ct. 46, 65 L. Ed. 165] referred to above, that: "A tax measured by net profits is valid, although these profits may have been derived in part, or indeed mainly, from interstate commerce . . . " Citing United States Glue Co. v. Oak Creek, and Shaffer v. Carter, supra.

In the North Carolina case it appears that although the taxpayer was a foreign corporation it was engaged in operating a manufacturing plant in the state and from

which it shipped its products in interstate commerce. However, the philosophy of this decision, and of those rendered in the cases United States Glue Co. v. Oak Creek and Shaffer v. Carter, is that a tax on net income derived from interstate commerce does not lay a direct burden on such commerce.

But the appellee has cited the case of Miller v. Illinois C. R. Co., 146 Miss. 422, 111 So. 558, decided in September 1926, prior to the enactment of the state income tax law of 1934 now involved in the case at bar, in support of its contention that our Court had previously decided that the state could not lay a tax on interstate commerce in any form whatever without violating the commerce clause of the Federal Constitution. However, the sole question for decision in that case was whether or not the Railroad Company, a foreign corporation engaged in both intra and interstate commerce within the state, was liable for income taxes before the enactment of Chapter 132, Laws of 1924, and under the provisions of Chapter 101, Laws of 1912, as amended by Chapter 116, Laws of 1914, the tax there involved being for the years 1918 to 1923, inclusive. In its opinion the Court stated that: ''One ground of appellee's demurrer was that, under the laws of this state, not until chapter 132 of the Laws of 1924, went into effect was a foreign railroad company, doing business in this state engaged in both intra and interstate commerce, liable for an income tax. We decide that question alone, . . . '' The Court then construed the provisions of said Act of 1912, as amended by that of 1914, and held that it was not the purpose of the legislature to impose an income tax on such a foreign corporation in view of the several provisions of these statutes which appeared to negative such intention. The Court concluded its opinion by saying: ''We are of opinion that no income taxes were imposed by our Statutes on railroads of the character of appellee until chapter 132 of the Laws of 1924.'' Therefore, the statement made by the Court in that case in the course of its opinion

to the effect that "the state cannot lay a tax on interstate commerce in any form whatever," etc., without violating the commerce clause of the Federal Constitution, was not a conclusion then necessary to the decision of the case. Moreover, the general statement thus made could not be made applicable to a tax on net income derived from interstate commerce, without disregarding the decisions of the Supreme Court of the United States in the cases of United States Glue Co. v. Oak Creek, and Shaffer v. Carter, hereinbefore discussed.

Therefore, in view of what this Court had said in the case of State ex rel. Knox v. Gulf, M. & N. R. Co., supra, and which had not been overruled by the case of Miller v. Illinois C. R. Co., supra, we would not be warranted in saying that the legislature did not intend to provide for the assessment of the taxes involved in the case at bar when it enacted the state income tax act of 1934 and employed language sufficiently clear to include such taxes.

But it is also urged by the appellee that such intention on the part of the legislature is negatived by the fact that three cases were filed in the Federal Court in 1931 by the Interstate Natural Gas Company against the State Tax Commission, and which had been decided adversely to the State Tax Commission in its attempt to collect privilege taxes, franchise taxes and income taxes, respectively, from the said Gas Company; that Case No. 343, involving the claim for privilege taxes, was appealed to the United States Supreme Court (State Tax Commission v. Interstate Natural Gas Co., 284 U. S. 41, 52 S. Ct. 62, 76 L. Ed. 156, 157), and was there affirmed on the ground that the Gas Company was engaged exclusively in interstate commerce, and wherein Mr. Justice HOLMES pointed out that this interstate commerce "the state cannot touch"; that Case No. 344 involving a claim for franchise taxes was not appealed; and that Case No. 345, involving an attempt to collect income taxes from the Gas Company under the state income tax law of 1924, was also not appealed, and with the result that an injunction issued by

a three-judge court, composed of Circuit Judge Walker and District Judges Holmes and Borah, remained in full force and effect whereby the State Tax Commission was enjoined from collecting the income tax from the said Interstate Natural Gas Company because of the fact that it was a foreign corporation and engaged wholly and exclusively in interstate commerce in the State of Mississippi.

In determining whether or not this previous litigation in these three cases should be pursuasive in support of the contention that the legislature did not by its enactment of the state income tax law of 1934 intend to levy a tax on the net income of a foreign corporation engaged exclusively in interstate commerce in this state, it is sufficient to say that as to the first two cases involving privilege taxes and franchise taxes, respectively, the Supreme Court of the United States had theretofore held that a state could not tax the privilege of doing interstate commerce nor levy a tax upon the exercise of a corporate franchise in that behalf. So that when Mr. Justice HOLMES said on the appeal of the first of these cases that this interstate commerce "the state cannot touch," he had in view the tax on the privilege of transacting such interstate commerce business. As to the last of these cases the adverse decision against the State Tax Commission, although not appealed from, is not res adjudicata between the parties to the present litigation, since the appellee here was not a party to that suit. Neither did the judgment of the said three-judge federal court preclude the legislature from thereafter levying the tax here involved, nor did it negative its intention so to do merely because the State Tax Commission had failed to take an appeal from such judgment and obtain a dissolution of the said writ of injunction. On the other hand, we are of the opinion that the legislature was warranted in assuming that the tax on the net income from the ownership of any property within this state devoted exclusively to interstate commerce would be sustained by both the State and Federal

Supreme Courts in view of the decision in State ex rel. Knox v. Gulf, M. & N. R. Co., and the Federal Supreme Court decisions hereinbefore discussed, which hold that such a tax on net income is not a direct burden on interstate commerce. Moreover, no case where a foreign corporation was engaged exclusively in interstate commerce, and was not present in the taxing state otherwise than by its ownership of the property within the state from which the income sought to be taxed was derived, had been decided to the contrary.

And it is now well settled by the decisions of the Supreme Court of the United States rendered since the enactment of our income tax act of 1934, that ''in imposing taxes for state purposes a state is not exercising any power which the Constitution has conferred upon Congress. It is only when the tax operates to regulate commerce between the states or with foreign nations to an extent which infringes the authority conferred upon Congress, that the tax can be said to exceed constitutional limitations.'' McGoldrick v. Berwind-White Coal Mining Co., 309 U. S. 33, 60 S. Ct. 388, 391, 84 L. Ed. 565, 128 A. L. R. 876, and the cases therein cited. It was further said in the McGoldrick case, supra:

''But it was not the purpose of the commerce clause to relieve those engaged in interstate commerce of their just share of state tax burdens, merely because an incidental or consequential effect of the tax is an increase in the cost of doing business, Western Live Stock v. Bureau of Revenue, 303 U. S. 250, 254, 58 S. Ct. 546, 548, 82 L. Ed. 823, 115 A. L. R. 944. Not all state taxation is to be condemned because, in some manner, it has an effect upon commerce between the states, and there are many forms of tax whose burdens, when distributed through the play of economic forces, affect interstate commerce, which nevertheless fall short of the regulation of the commerce which the Constitution leaves to Congress. A tax may be levied on net income wholly derived from interstate commerce.''

In the recent case of Memphis Natural Gas Co. v. Beeler, 315 U. S. 649, 62 S. Ct. 857, 862, 86 L. Ed. 1090, wherein the petitioner in the case at bar was assessed with a tax on net income by the State of Tennessee, because of income derived from the operation of this interstate gas pipe line, and where the tax was limited in its application to only that part of the gas company's net profits which arose in the State of Tennessee, the contention was made that a foreign corporation engaged solely in interstate commerce was not subject to the tax. The tax was upheld, apparently on the theory that the Gas Company had a commercial domicile in the City of Memphis, Tennessee, and was contractually interested in the profits made by the purchaser of its gas in that state. However, the Supreme Court of the United States there re-affirmed the principle of liability for net income taxes on interstate commerce by saying:

"In any case even if taxpayer's business were wholly interstate commerce, a nondiscriminatory tax by Tennessee upon the net income of a foreign corporation having a commercial domicile there, cf. Wheeling Steel Corp. v. Fox [298 U. S. 193, 56 S. Ct. 773, 80 L. Ed. 1143], supra, or upon net income derived from within the state, Shaffer v. Carter, 252 U. S. 37, 57, 40 S. Ct. 221, 227, 64 L. Ed. 445 [458]; [State of] Wisconsin v. Minnesota Min. & Mfg. Co., 311 U. S. 452, 61 S. Ct. 253, 85 L. Ed. 274; cf. People of State of New York ex rel. Cohn v. Graves, 300 U. S. 308, 57 S. Ct. 466, 81 L. Ed. 666, 108 A. L. R. 721, is not prohibited by the commerce clause on which alone taxpayer relies. United States Glue Co. v. Oak Creek, 247 U. S. 321, 38 S. Ct. 499, 62 L. Ed. 1135, Ann. Cas. 1918E, 748; Underwood Typewriter Co. v. Chamberlain, 254 U. S. 113, 119, 120, 41 S. Ct. 45, 46, 65 L. Ed. 165, [168, 169]; cf. Bass [Ratcliff & Gretton] v. State Tax Commission, 266 U. S. 271, 45 S. Ct. 82, 69 L. Ed. 282, [supra]; . . . Butler Bros. v. McColgan, 315 U. S. 501, 62 S. Ct. 701, 86 L. Ed. [991].

"It does not appear that upon any theory the tax can be deemed to infringe the commerce clause."

It is true that in the case above referred to, the Gas Company had a commercial domicile in Tennessee, but it will be observed that in the foregoing quotation the Federal Supreme Court declared that the tax could be levied on the net income of a foreign corporation "having a commercial domicile there, . . . *or upon net income derived from within the state.*" (Italics ours.) See also the cases of International Elevator Co. v. Thoresen, 58 N. D. 777, 228 N. W. 192; Diefendorf v. Gallet, 51 Idaho 619, 10 P. (2d) 307; Humble Pipeline Co. v. State of New Mexico, 45 N. M. 29, 109 P. (2d) 247; and Stone v. General Contract Purchase Corp., 193 Miss. 301, 7 So. (2d) 806, 140 A. L. R. 1029; and compare Lincoln National Life Ins. Co. v. State Tax Commission, 196 Miss. 82, 16 So. (2d) 369, all of which strongly support the contention of the appellant herein.

We, therefore, conclude that the trial court was in error in overruling the demurrer interposed by the State Tax Commission to the petition of the appellee Gas Company for a judicial review, and adjudicating the non-liability for the income taxes involved, and that the decree of the court below should be reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.

Reversed and remanded.

## ON MOTION FOR FINAL JUDGMENT.

The appeal herein having been taken from a judgment overruling a demurrer and adjudging non-liability for the tax claim involved and the cause having been reversed and remanded for further proceedings not inconsistent with the views expressed in our opinion rendered therein on October 9, 1944, and it now appearing that for the reasons stated in the second paragraph of the said opinion of this Court the appellant has filed its motion

herein asking that a final judgment be rendered in its favor by this Court for the sum of $66,485.82, the amount of taxes and interest claimed as of the said 9th day of October, 1944, and that the appellee has entered an appearance on said motion and has filed no contest thereto, the Court is of the opinion that the motion should be sustained without prejudice to the right of the appellee herein to have the question of its liability for the tax reviewed by the Supreme Court of the United States if an appeal be taken to said Court. It is so ordered.

Motion sustained.